IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-04028-01,02-CR-C-BCW |
| | ) | |
| | ) | |
| KENNETH HARVEY HUDSON | ) | |
| PHILIP DANIELL DENNINGTON, | ) | |
| | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

Pending before the Court are defendants Kenneth Harvey Hudson and Philip Daniel Dennington's motions to suppress evidence, and their suggestions in support thereof. (Docs. 62 and 81).[1] The defendants allege suppression is warranted because the officers lacked the requisite reasonable suspicion to justify the initial investigatory stop in this case. The defendants additionally assert the search warrant, which authorized the search of the vehicle at issue in this case, was not supported by probable cause in violation of their rights under the Fourth Amendment to the United States Constitution. The Government filed suggestions in opposition to defendant Hudson's motion to suppress.[2] (Doc. 66). Defendant Hudson's motion to suppress was filed on October 7, 2016, and an evidentiary hearing regarding the motion was held on January 31, 2017. Subsequently, on February 27, 2017, defendant Dennington filed his motion

---

[1] Defendants Hudson and Dennington have filed separate motions to suppress, and a separate hearing was held for each motion. However, both motions center on the same factual circumstances and allege several of the same arguments. Therefore, the Court will consider the evidence and the arguments made at the two evidentiary hearings, as well as the arguments made in the two motions filed by the defendants, together as to the two defendants, in the same Report and Recommendation.

[2] During a teleconference with the parties on March 9, 2017, the Court told the Government that it was not necessary to file a response to defendant Dennington's motion to suppress, as they had already filed an opposition to defendant Hudson's motion, but that after hearing the testimony during the evidentiary hearing, if they wished to file a supplemental brief in response, the Court would allow the Government to file a supplemental response.

to suppress, and the Court held an evidentiary hearing regarding defendant Dennington's motion on March 16, 2017.

## Factual Background

In the instant case, defendants Hudson and Dennington are charged in Count 1 of the Indictment (doc. 1) with conspiracy to distribute methamphetamine, and in Count 2, which charges both defendants with possession with intent to distribute methamphetamine. Additionally, defendant Hudson is charged in Count 3 of the Indictment as being a felon in possession of a firearm.

On or about December 31, 2015, Lake Area Narcotics Enforcement Group (LANEG) Task Force Officer (TFO) Bryan Pratt was conducting a narcotics investigation in Osage Beach, Camden County, Missouri. In the early afternoon on December 31, 2015, TFO Pratt received information from a confidential source (CS) indicating that three men and one woman were in possession of a large quantity of methamphetamine. The CS informed TFO Pratt that the four individuals were from Louisiana, and that the three men were traveling in a rented Chevrolet Malibu bearing Alabama registration 58HY245, and the woman was driving a Ford Fusion bearing Louisiana registration 2BG097. The CS reported that one of the men was named "Ken," and that the four individuals were preparing to depart for Louisiana. The CS also stated that he had observed a large Ziploc bag containing crystal methamphetamine and a shotgun in the Malibu.

After receiving this information from the CS, TFO Pratt contacted Osage Beach Police Sergeant Shelton, and requested that he respond to the area and attempt to locate the vehicles described by the CS. TFO Pratt also contacted Osage Police Department Canine Corporal Sam Ford to inform him that they were in the process of an investigation, and to ask if Corporal Ford and his canine, Axel, would be available later if called upon. At approximately 3:21 p.m., Sgt. Shelton observed the two suspect vehicles at the Eagle Stop gas station located at Osage Beach Parkway and Highway KK. Sgt. Shelton approached the two vehicles while they were parked at the gas pumps, and contacted the occupants of the vehicles. Sgt. Shelton asked the individuals to sit on the curb and TFO Pratt responded to the scene.

TFO Pratt contacted the driver of the Malibu, Kenneth Harvey Hudson, and attempted to speak to him, but the defendant refused to speak or answer any questions. TFO Pratt then made contact with Phillip Daniel Dennington, who was sitting in the front passenger seat. When asked

2

why he and the other individuals were in Missouri, defendant Dennington responded that they were visiting family, but could not answer when asked whose family they were visiting. After observing a shotgun in plain view between the console and the passenger's seat of the Malibu, TFO Pratt asked defendant Dennington who the shotgun belonged to, to which the defendant responded, "I don't know." TFO Pratt then asked defendant Dennington if he was a felon, to which the defendant responded, "Yes." TFO Pratt attempted to contact the third male passenger, Sir Master Ford, who was sitting in the back seat of the Malibu, but Ford acted as if he did not understand TFO Pratt.

TFO Pratt next made contact with Naomi Sepulvado, the driver of the Fusion, who stated that she was traveling back to Louisiana with the three men, Hudson, Dennington, and Ford. When asked by TFO Pratt if there were any weapons or controlled substances in the Fusion, Sepulvado stated that there were some needles. She admitted to being a heroin user, had last used heroin four days prior, and that she was currently under the influence of Suboxone. During the investigation, Sepulvado consented to a search of the Fusion. During the consent search, user amounts of methamphetamine, heroin, marijuana, prescription controlled substances, and paraphernalia used in the consumption of controlled substances were recovered.

During the investigation at the Eagle Stop gas station, Sgt. Shelton called Corporal Ford and requested he and his canine respond to the scene to conduct a canine sniff. Corporal Ford testified during the evidentiary hearing on March 16, 2017, and stated that when he arrived at the scene he was asked to conduct a sniff on both the Malibu and the Fusion. Corporal Ford testified that he prepared his canine for the sniff, and then took the dog around the Malibu in a counter-clockwise direction, and that the dog went to a "final alert" position three separate times, at three different locations, during the sniff of the vehicle.[3] Corporal Ford then returned the canine to his vehicle for a drink and to refresh and clear his mind before conducting a sniff of the Fusion. While conducting a sniff of the Fusion, the canine went to a final alert position, alerting to the presence of narcotics, on the passenger side B pillar of the vehicle. TFO Pratt secured the Malibu and had it towed to the Osage Beach Police Department, pending application for a state search warrant for the vehicle. In his application, TFO Pratt listed as a basis to support the

---

[3] Corporal Ford testified that the canine went to a "final alert" seated position at the driver side A pillar, near the windshield, at the rear driver side door, and at the passenger side rear door B pillar. The dog also showed interest in the trunk of the Malibu.

issuance of the warrant, the information obtained from the confidential source, the subjects' criminal histories, their behavior, and the positive alert from Corporal Ford's canine.

On December 31, 2015, Camden County, Missouri Associate Circuit Judge Aaron Koeppen issued a search warrant for the Malibu. The search warrant was admitted into evidence as Government's Exhibit 1 during the evidentiary hearing on January 31, 2017. Upon execution of the search warrant, officers recovered the following: (1) several Ziploc bags containing what appeared to be crystal methamphetamine, which was later tested by the Missouri State Highway Patrol Crime Lab and was determined to be 973.32 grams of methamphetamine; (2) a bag of marijuana in the front console cup holder; (3) National rental car receipt containing loose marijuana on the right rear passenger seat console; (4) a backpack, which contained a payroll stub payable to Phillip Dennington and a box of Winchester .40 caliber ammunition, on the right rear seat; (5) Glock, Model 23 Generation 4, .40 caliber handgun, serial number VGX764, with a loaded magazine, concealed under the front passenger seat; (6) Smith & Wesson, Model SD40 VE, .40 caliber handgun, serial number FWX3855, with magazine, concealed between console and driver's seat; (7) Rohm, GMBH Sontheim/BRZ, Model 66, .22 caliber revolver, serial number IB251303, loaded with five bullets, inside the back pocket behind the driver's seat, immediately adjacent to where Ford was sitting; (8) Mossberg, 500 Blackwater, 12 gauge shotgun, serial number T839143, loaded with four .00 buckshot shells, between the console and front passenger seat; (9) Samsung Galaxy S4 cell phone, HTC smartphone, and an iPhone; and (10) clothing, duffel bags, air mattresses, pillows, bed sheets, a television, and other electronic equipment in the trunk.

## **Analysis**

In this case, the defendants allege several arguments in support of their claim of suppression of the evidence recovered following the execution of the search warrant on the Malibu. Defendants first allege that the officers lacked the necessary reasonable suspicion to justify the initial investigatory stop. Defendants further allege that the search warrant obtained was not supported by probable cause because information was received from a confidential informant, and the defendants question the validity of the canine sniff in this instance. Consequently, the defendants allege the search of the Malibu, and the evidence recovered, was the product of an illegal search and seizure in violation of the defendants' rights under the Fourth Amendment to the United States Constitution, and therefore suppression of the evidence is

required. The Government has responded by stating that the officers possessed the requisite reasonable suspicion to conduct the initial investigatory stop, and the search warrant authorizing the search of the Malibu was supported by probable cause, therefore suppression is not warranted. The Court will address these arguments in turn below.

### A. Initial Investigatory Stop

The defendants assert Sgt. Shelton and TFO Pratt did not possess reasonable suspicion to justify the initial investigatory stop at the Eagle Stop gas station. The defendants also assert that their detention continued for an unreasonable amount of time in light of the circumstances. The Government has responded in opposition, asserting that the information provided by the CS, which was corroborated by the officers, provided the officers with reasonable suspicion to conduct the investigatory stop.

Police may conduct a brief investigative stop when they have reasonable, articulable suspicion that a person is committing or is about to commit a crime. United States v. Horton, 611 F.3d 936, 940 (8th Cir. 2010). This standard requires that officers be able to point to specific, articulable facts justifying the seizure. Id. Reasonable, articulable suspicion requires less than probable cause of criminal activity, but the suspicion cannot be based on an "inarticulate hunch." Id. The existence of reasonable, articulable suspicion is determined by the totality-of-the-circumstances, taking into account an officer's deductions and rational inferences resulting from relevant training and experience. Id. (citing United States v. Arvizu, 534 U.S. 266, 273-74 (2002)). "A confidential informant's tip may support a reasonable suspicion if it has sufficient indicia of reliability, such as the informant's track record as a reliable source or independent corroboration of the tip." United States v. Corrales-Portillo, 779 F.3d 823, 830 (8th Cir. 2015) (quoting United States v. Manes, 603 F.3d 451, 456 (8th Cir. 2010)).

Here, TFO Pratt learned from the CS that three men and one woman were in possession of a large quantity of crystal methamphetamine and were traveling in a Chevrolet Malibu and a Ford Fusion. The CS provided the states and registration numbers for both vehicles, stated that one of the men's name was "Ken," and that the four individuals were traveling to Louisiana. The CS also stated that he observed a shotgun and a large Ziploc bag containing crystal methamphetamine in the Malibu. TFO Pratt relayed this information to Sgt. Shelton who observed the suspect vehicles described by the CS in the Eagle Stop gas station parking lot. TFO Pratt responded to the scene and learned from a driver's license that one of the men was named

5

Ken. The vehicle descriptions matched the description the CS provided, and TFO Pratt observed a shotgun in plain view in the Malibu, as the CS had also observed and informed TFO Pratt. Therefore, all of the information provided by the CS was independently corroborated by the officers at the scene. Additionally, TFO Pratt testified at the evidentiary hearing on January 31, 2017, and stated he had used this CS on two prior occasions and both times the CS has supplied information that was later corroborated. The Court finds there exists sufficient indicia of reliability as to the information provided by this confidential informant, such that the officers had reasonable suspicion that a crime was being or was about to be committed. Therefore, the officers were justified in conducting the initial investigatory stop, as they possessed the requisite reasonable suspicion. Consequently, suppression of the later recovered evidence, under a theory that the officers lacked reasonable suspicion to justify the initial investigatory stop, is without merit and should be denied.

Additionally, the defendants allege that their detention continued for an unreasonable amount of time in light of the circumstances. Presumably, the defendants are referring to the time period in which the canine officer and his dog were summoned to the scene to conduct a drug sniff of the vehicles. While it is true that police may not extend an otherwise completed stop in order to conduct a dog sniff absent reasonable suspicion, the Court has already determined that the officers possessed reasonable suspicion in this case. See Rodriguez v. United States, 135 S.Ct. 1609 (2015) (Police may not extend an otherwise completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff). Therefore, if the defendants are asserting they were unlawfully detained while waiting for the canine officer, this argument is meritless and should be denied.

### B. Validity of the Search Warrant

The defendants next assert that suppression of the evidence recovered following the search of the Malibu is necessary because the warrant authorizing the search of the vehicle was not supported by probable cause, as required by the Fourth Amendment. The defendants advance several theories in support of this contention, including the reliability of the CS, and questioning the soundness of the canine sniff in this case. The Government has responded in opposition, asserting that there existed sufficient indicia of reliability regarding the information provided by the CS, the canine sniff was proper, and the search warrant was validly obtained and executed in this case. Additionally, the Government asserts that in this case the search warrant

6

was superfluous, as there existed sufficient probable cause to search the vehicle without obtaining the warrant, therefore the defendants' contention that suppression of the later recovered evidence is required is without merit.

### 1. Reliability of the Confidential Source

The defendants allege the search warrant obtained in this case lacked probable cause, in part, because in his application for the warrant, TFO Pratt provided the information he received from the CS as one of his asserted bases for probable cause, and the defendants question the credibility of the CS in this case. The defendants believe they know the identity of the CS, and believe that this individual is a convicted felon, information that if true, was not provided to the judge in the application for the search warrant. The defendants contend that if the CS is in fact a convicted felon, this calls into question his credibility, and also calls into question TFO Pratt's assertion within the application that he received information from a "reliable" confidential source. The Government, in opposition, asserts that the reliability of the information provided by the CS was established through the officers' ability to independently corroborate the information they received.

The Fourth Amendment to the United States Constitution states, in relevant part, "no Warrants shall issue, but upon probable cause, supported Oath or affirmation." U.S. CONST. amend. IV. The Eighth Circuit has held that "[p]robable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Sundby, 186 F.3d 873, 875 (8th Cir. 1999) (internal citations omitted).

"When an informant has provided reliable information in the past or where his tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination." United States v. Winarske, 715 F.3d 1063, 1067 (8th Cir. 2013) (quoting United States v. Caswell, 436 F.3d 894, 898 (8th Cir. 2006)). "Even the corroboration of minor, innocent details can suffice to establish probable cause." United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (internal citations omitted). Whether an informant's tip produces probable cause for issuance of a warrant is determined using a totality-of-the-circumstances approach. Illinois v. Gates, 462 U.S. 213, 238 (1983).

Here, as previously discussed, the officers on the scene were able to corroborate all of information the CS provided TFO Pratt. Additionally, the identity of the informant was known

to the officers, as this CS had, on two prior occasions, provided information to TFO Pratt that was later corroborated. See United States v. Scott, 818 F.3d 424, 432 (8th Cir. 2016) ("Since the confidential source in this case was not anonymous, less corroboration was required.") (internal citations omitted). Therefore, the Court finds that in this case there existed sufficient indicia of reliability from independent corroboration of the information provided by the CS to support a probable cause determination.[4]

### 2. Canine Sniff

The defendants' next asserted basis for suppression in this case addresses the soundness of the canine sniff at the scene conducted by Corporal Ford and his canine, Axel. The defendants contend that the Fusion, which was in close proximity to the Malibu, contained illegal narcotics, and the canine was alerting to the narcotics from the Fusion. Specifically, the defendants allege that there was cross-contamination with the odor of the narcotics recovered from the Fusion, which was searched with the consent of the driver, Ms. Sepulovado, and therefore the reliability of the canine alert on the Malibu in this case is called into question.

It is well established that a positive alert by a canine can provide the probable cause required to conduct a search. See United States v. Mathews, 784 F.3d 1232, 1235 (8th Cir. 2015) ("[T]he positive alerts from those sniffs alone provided probable cause to issue the search warrant for Mathews's apartment."); United States v. Bowman, 660 F.3d 338, 345 (8th Cir. 2011) ("Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present.") (internal citations omitted).

Here, the Court is satisfied as to the reliability of the canine sniff. Corporal Ford testified at the evidentiary hearing on March 16, 2017, and stated when he arrived at the scene he was asked to conduct a sniff on both the Malibu and the Fusion. Corporal Ford testified that after he prepared his canine for the sniff, he led the dog around the Malibu first, in a counter-clockwise manner, beginning at the front driver side of the vehicle. Testimony established that during the sniff, the canine positively alerted three separate times, in three separate locations, on the

---

[4] The Court does note that whether a confidential source is a convicted felon is information of which a judge issuing a search warrant should be made aware. It is the opinion of this Court that if a confidential source is a convicted felon, the best practice would be to include such information in the application for the search warrant, as that information would be relevant to the source's credibility when the judge is making a probable cause determination.

Malibu.  Following the sniff of the Malibu, Corporal Ford testified that he allowed the canine to get a drink of water and refresh and clear his mind, before conducting the sniff on the Fusion, to which the canine also positively alerted.

During the evidentiary hearing on March 16, 2017, Corporal Ford testified regarding the manner in which his canine conducts a sniff, and stated that his canine goes to "point of odor," meaning that he pulls towards the location of the odor, and attempts to go to the source of the odor, because that is the where the smell is the strongest. Corporal Ford also stated that if the canine was alerting to the presence of narcotics in another vehicle, his canine would pull toward that vehicle, and that based on his experience and training involving his canine, his canine was alerting specifically to the Malibu in this case.  Additionally, Corporal Ford testified regarding the certifications his canine has received, which include certifications through the National Narcotics Detector Dog Association, North American Police Work Dog Association, and the Missouri Police Canine Association.  Corporal Ford stated his canine is independently certified each year through these organizations.

Further, during the evidentiary hearing on March 16, 2017, TFO Pratt testified that although Ms. Sepulovado had indicated that there was contraband present in the Fusion, and had consented to a search of the vehicle, the Fusion was not searched, and the narcotics were not seized, until after Corporal Ford had conducted the canine sniff of both the Malibu and the Fusion.  Therefore, based on the above, the Court neither believes that cross-contamination took place, nor questions the integrity of the canine alert on the Malibu in this instance, and suppression of the evidence subsequently recovered from the Malibu under this theory is meritless and should be denied.

In the instant case, considering the circumstances in totality, the Court finds that there were "sufficient facts to lead a prudent person to believe that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The canine sniff alone in this case was likely enough to provide the officers with probable cause to search the Malibu. See Mathews, 784 F.3d at 1235.  However, when the positive canine alert is coupled with the independently corroborated information obtained from the confidential source, and the behavior and criminal histories of the subjects at the scene, the Court finds this evidence sufficient to establish probable cause to search the vehicle.  Therefore, while the Court does find

9

the search warrant was validly issued in this instance, even assuming *arguendo* that the warrant was not validly issued, suppression would still not be appropriate because the warrant in this case was superfluous, as the officers had probable cause to search the vehicle prior to issuance of the search warrant. Having so found, the Court finds the defendants' argument in support of suppression, based on the lack of probable cause to issue the search warrant, to be meritless and the motion should be denied.

### Conclusion

For the reasons stated above, the Court concludes that the defendants' contentions regarding suppression of evidence in this case are without merit, and their motions to suppress should be denied.

IT IS THEREFORE RECOMMENDED that defendants Hudson and Dennington's motions to suppress statements made should be DENIED. (Docs. 62 and 81).

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 27th day of April, 2017, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge